STATE OF NORTH DAKOTA, Respondent, v. RAYMOND W. CRAIG, Appellant.

(208 N. W. 394.)

**Criminal law — affidavit of prejudice — duty of court to order removal of action to some other county and arrange for judge to try same.**

1. Where a defendant in a criminal action files an affidavit of prejudice

Note.—(1) On absolute right to change of venue for bias of judge, see 27 R. C. L. 814; 3 R. C. L. Supp. 1521.

against the county and against the judge who would preside at the trial, it is the duty of the court to order the action removed for trial to some other county and to arrange for and procure some other judge than the one objected to. Comp. Laws 1913, § 10,766.

**Criminal law — statute providing for change of place of trial and change of judges on accused's filing affidavit of prejudice held not repealed.**
2. Section 10,766, which provides for a change of place of trial and for a change of judges at the instance of the defendant filing affidavits of prejudice against the county and the judge, is not repealed by chapter 1 of the Session Laws of 1919, chapter 129 of the Session Laws of 1921 or by chapter 331 of the Session Laws of 1923, which provide for the designation by the supreme court of a trial judge, where affidavits of prejudice are filed against the judge to preside.

**Information — information charging making false entries in minutes of board of directors of bank, held within the statute.**
3. The defendant was prosecuted, under § 9903 of the Compiled Laws of 1913, for the making of a false entry in a record of the minutes of the board of directors of a bank with intent to conceal prior misconduct. It is *held*, for reasons stated in the opinion, that the information states a penal offense within the statute.

**Forgery — evidence held to sustain conviction of forgery in fourth degree.**
4. The evidence is examined and held to be sufficient to support the judgment of conviction.

Opinion filed January 4, 1926. Rehearing denied April 7, 1926.

Criminal Law, 16 C. J. § 306 p. 203 n. 56. Forgery, 26 C. J. § 43 p. 919 n. 93; § 68 p. 931 n. 68; § 137 p. 971 n. 69.

Appeal from the District Court of La Moure County, *Englert,* J. Affirmed.

*Francis J. Murphy* and *W. H. Barnett,* for appellant.

*George F. Shafer,* Attorney General, *Scott Cameron,* Special Assistant Attorney General, *Charles S. Ego,* State's Attorney, and *Chas. G. Bangert,* Special Assistant State's Attorney, for respondent.

BIRDZELL, J. The defendant has been found guilty of the commission of forgery in the fourth degree. He appeals from the judgment and from an order denying his motion for a new trial. The trial was had upon an amended information charging the offense, in sub-

stance, as follows: That the defendant, being an officer and director of the Ransom County Farmers Bank, a corporation engaged in the banking business at Lisbon, wilfully, unlawfully, fraudulently and feloniously, and with intent to then and there conceal certain misconduct theretofore committed by him in the management of the business of the banking corporation, did make a false entry or statement in a record or minute book owned and kept by the banking corporation for the purpose of recording true and correct minutes of the proceedings of the board of directors. The misconduct which the defendant is charged with intending to conceal through the false entry, is alleged to consist of a certain transaction whereby, sometime prior to the 23d day of August, 1923, the defendant, without authority and through the use of assets of the Ransom County Farmers Bank to the amount of $14,575.25, purchased certain notes of the face value of $48,775.20, and, without authority, wrongfully placed them into the assets of the Ransom County Farmers Bank, and, without authority, removed, charged off and extracted from the assets of the bank other notes, securities and moneys to the amount of, to wit, $31,728.73; that part of the assets so removed consisted of personal notes and obligations of the defendant and of companies and associations in which he was interested; that as a part of the same transaction he credited his personal account with the amount of $959.52 and credited to the undivided profits account of the bank the amount of $999.37. The false entry in the record, with the making of which the defendant is charged, is alleged as follows: "The board also found that $48,775.20 worth of paper had been purchased from the Northwestern National Bank of Minneapolis for approximately $15,000. This paper was formerly a part of the assets of the Farmers Bank of Nome. The paper above mentioned had been run into the bank in substitution of a like amount of worthless paper which was withdrawn and charged off the assets. It was moved and seconded that the acts of the officers in connection with this transaction be, and the same are hereby, fully approved and ratified." The defendant is further charged with subscribing to the above entry, and unto the entire minutes of the meeting at which the same purports to have been adopted, the name of one M. C. Suhumskie, as secretary of the meeting.

It is then charged that in fact no meeting of the board of directors

of the bank was ever held at which the above quoted resolution or any resolution with a like import or meaning was passed. On this appeal there are two main contentions: First, the appellant attacks the jurisdiction of the court to try the cause and the venue of the trial in La Moure county; second, he challenges the sufficiency of the information and of the evidence.

The first contention is based upon the following proceedings had before the trial: The defendant filed in the district court of Ransom county, being the court in which the information was filed, an affidavit of prejudice against the presiding judge and further charging prejudice on the part of the people generally in the county of Ransom against the defendant such as would preclude a fair and impartial trial in that county. Additional affidavits were filed in support of the defendant's affidavit of prejudice against the county. These affidavits were forwarded to this court by the clerk of the district court and returned by the clerk of this court with the advice that, where affidavits of prejudice are filed against both the judge and the county in criminal causes, the district judge has jurisdiction and authority to make the order designating the county in which the action shall be tried and naming the judge to try the same, under the provisions of § 10,766 of the Compiled Laws for 1913. Upon the return of the affidavits, an order was made by the district judge transferring the cause to La Moure county and designating the Honorable M. J. Englert as trial judge. Promptly upon the opening of the trial, objection was made to the jurisdiction of the judge to try the cause and in support of the objection counsel relied, then as now, upon chapter 129 of the Session Laws of 1921 and chapter 331 of the Session Laws of 1923, wherein it is declared (Sess. Laws 1921, § 1, chap. 129; Sess. Laws 1923, § 1, chap. 331), that when "any defendant in any criminal action pending in any of the district courts of the state, shall . . . file an affidavit stating that he has reason to believe and does believe that he can not have a fair and impartial trial or hearing before the judge of the district court by reason of the prejudice or bias of such judge, the court *shall proceed no further in the action and shall thereupon be disqualified to do any further act in said cause;*" and contended that the order designating Judge Englert was without authority and void.

The two acts in which the above language appears purport, accord-

ing to their title, to amend and re-enact § 7644 of the Compiled Laws for the year 1913, as amended by chapter 1, Session Laws for the year 1919 "relating to change of judges in civil and criminal actions in the district court, for prejudice or bias of judge thereof; providing for the calling in of another judge of another judicial district, . . . and repealing all acts or parts of acts in conflict herewith." At the time these statutes were enacted, § 10,756 of the Compiled Laws for 1913 made provision for awarding a defendant charged with crime a change of the place of trial upon certain stated conditions, which would militate against a fair trial in the county in which the venue is laid, and § 10,766 of the Compiled Laws for 1913 prescribed the procedure to be followed when a defendant in a criminal action should file an affidavit of prejudice against the judge and the county, as follows:

"(1) If the defendant, or defendants, asks for a change of the place of trial of said action on any of the grounds specified in § 10,756" (charging prejudice against the county), "and also for the cause mentioned in this section, it shall be the duty of the court to order said action removed for trial to some other county or judicial subdivision in this state, as provided in this article, and to request (arrange for and procure some other judge than the one objected to), to preside at the trial in said action."

These sections were not expressly repealed by the subsequent enactments of 1919, 1921 and 1923, relating to change of judges in civil and criminal actions, nor were they expressly referred to. These later statutes originated in an amendment of § 7644 of the Compiled Laws for 1913, which is limited to changes of judges in *civil* actions. See chapter 1, Session Laws of 1919. In 1921, by further amendment and re-enactment, the statute was enlarged to include the subject of change of judges in criminal actions and the like amendment was carried into the act of 1923, but there is nothing in either the title or the body of the two later acts to indicate any purpose to change any existing provision of law with reference to changes of venue on account of prejudice in the county where a criminal action is pending. We must, therefore, approach the consideration of the appellant's contentions with the thought that the legislature has not sought to change the prescribed procedure for giving to the defendant in a criminal action a change of venue from the county.

It is made the duty of the court in which the affidavit is filed to make an order removing the cause to some other county for trial and to request, arrange for and procure some other judge than the one objected to to preside at the trial. The later enactments provide only for the designation by the supreme court of a trial judge when an affidavit is filed against the judge who, but for the affidavit, would preside. They do not contemplate or provide for the designation by the supreme court of a judge to pass upon the affidavit of prejudice against the county, who would in turn exercise the authority conferred by § 10,766 of the Compiled Laws for 1913 to designate a place of trial and another judge to try the cause. In these later acts it is further provided that, after an affidavit of prejudice is filed against the judge, no juror shall be excused except by the incoming judge. If counsel's construction be correct, it would follow that, if the only affidavit filed at a given term were against both the judge and the county, a judge called in to act solely on the affidavit would be the only judge who could pass upon the excuses of the jurors, although having nothing whatever to do with the trial of any cause at the term. Considering the entire content of the acts of 1919, 1921 and 1923, we deem it to be reasonably clear that the legislature dealt only with affidavits of prejudice against the judge who would otherwise preside at the trial and not with affidavits filed for the double purpose of securing a change of judge and a change of the place of trial. Such has been the uniform construction of these statutes by this court whenever called upon to designate judges following the filing of affidavits of prejudice, and in this case the established practice in that regard was followed. We do not regard the reasons advanced in support of a departure from our previous construction and from the uniform practice as being persuasive.

The contention that the information does not charge an offense and that the evidence is insufficient to support a conviction, involves a consideration of the statute under which the prosecution was had and of the facts that were developed upon the trial. The statute reads (Comp. Laws 1913, § 9903):

"Every person who, being a member or officer, or in the employment of any corporation, association or partnership, falsifies, alters, erases, obliterates or destroys any accounts or book of accounts or records belonging to such corporation, association or partnership or appertain-

ing to their business, or makes any false entry in such account or book, or keeps any false account in such business, with intent to defraud his employers, or to conceal any embezzlement of their money or property, or any defalcation or other misconduct, committed by any person in the management of their business, is guilty of forgery in the fourth degree."

It is said that the making of the false entry in the minutes of the board of directors revealed, rather than concealed, any prior defalcation or misconduct of the defendant, and, furthermore, that it records a transaction which was in fact beneficial to the corporation rather than detrimental.

The purpose of the statute is plain. It is designed to penalize officers, members or employees of corporations, associations or partnerships, who falsify accounts or records of the corporation or association with intent to defraud the employer or to conceal defalcation or misconduct. Speaking broadly, the offense defined involves four elements: the relationship of employee, the falsification of the account or record, the specific intent with which the act is done, and, if the specific intent be concealment, the commission of embezzlement, defalcation or misconduct which the falsification was intended to conceal. Turning now to the books of the bank and the facts disclosed upon the trial, do they show misconduct? The general journal of the bank, under date of July 26, 1923, showed that, of loans which the bank had made, there had been paid $30,850.30. Of these paid loans, $6,961.12 was the defendant's personal paper; $8,900 was that of Craig and Company. There was also a loan of $2,124.19 to a firm in which the defendant was a partner, and of $2,400 to the Lisbon Finance Corporation, a company in which the defendant was interested. These all appear as having been paid; not charged off. There is listed as loans made, $48,487.88 under the general description of "Nome Paper." It also appears from this journal that the bank owes bills payable on account of the "Nome paper" of $10,000, and there are other items indicating that the bank has paid for it some $4,575.25 in addition. While the journal shows a payment of the Craig and other loans to the extent of $30,850.30, it would perhaps indicate clearly enough to anyone examining it that these loans were not in fact paid but were merely wiped out as credits of the bank and that there was substituted therefor the

$48,000 of "Nome paper" which had been acquired for something over $14,000.. And it would also indicate that this Nome paper had been acquired at the expense of the Ransom County Bank or partially at the expense of the bank and partially by others. So far as the books show, in other words, the bank has acquired for less than $15,000 paper which it carries on its books at more than $48,000, and the margin is taken up by items of personal credit to Craig, by the undivided profits account and by the payment of the Craig and other paper previously held by the bank. It appeared on the trial that the entire amount paid for the "Nome paper" was paid by the bank.

The argument, then, that the transaction was a good one for the bank because the paper substituted for that which was marked paid was much more valuable, when analyzed in the light of the facts, amounts to a contention that because Craig had made a good deal for the bank his personal indebtedness should be forgiven. This book, supplemented by the fact that the Ransom County Bank paid to a Minneapolis bank the entire purchase price of the Nome paper, affords conclusive proof of misconduct. Upon the acquisition of the Nome paper, those who were indebted thereon were indebted to the bank and not to Craig, and the margin between what the bank paid for this paper and the face value of it was simply used to erase the liability of Craig and others to the bank for actual money previously loaned to them. In other words, the bank was being "paid in its own coin." This is wrongful conduct.

The resolution entered in the minute book by the defendant recites the acquisition of this paper for approximately $15,000 and says that it had been run into the bank in substitution of a like amount of worthless paper which was withdrawn and charged off the assets. It does not identify the worthless paper and it does not indicate that the worthless paper had been treated as paid. Then it recites the carrying of a motion ratifying and approving the transaction. Would this have any tendency to conceal the wrongful conduct and is it evidence of a specific intent to conceal it? The resolution would not apprise a stockholder or examiner that the rights of the bank had been in the least jeopardized in the collection of the so-called worthless paper. They would not be advised that it had been marked paid. They would merely infer that the directors considered it advisable to carry as

assets of the bank the Nome paper rather than that which had been "charged off." Neither would it serve any notice that any part of this margin of difference had been represented by a deposit in the personal account of the defendant. The intelligent stockholder, having confidence in the board of directors and reading the resolution, would merely be impressed that the rights of the bank against its former debtors were the same as they always had been and that the transaction, amounting to an investment of $15,000 in $48,000 worth of paper which had formerly comprised a portion of the assets of a bank in another town, was probably a good investment. The resolution is not a guidepost pointing to misconduct. It is merely a recital of a transaction which might have been a profitable one for the bank if carried out in the way indicated therein, and the stockholder might well presume that, if the directors approved the transaction as recited, it was a profitable one. It pretends to stamp as regular and proper a transaction which was in fact wholly irregular and improper. As it recites only what might have been properly accomplished and omits to recite those elements in the real transaction which were wrongful, the logical inferences are that it would tend to conceal and that there was a purpose and intent to conceal.

There is no merit in the argument that the minute book of the board of directors of the corporation is not a record within § 9903 of the Compiled Laws for 1913.

There is little merit in the argument that the evidence is insufficient to support a conviction. The vice president, Suhumskie, whose name purports to have been signed to the minutes, testified, with reference to the meeting, that his name was signed to the minutes in the handwriting of the defendant; that in April of 1924 the defendant told the witness that he had signed his (the latter's) name to the minutes of the meeting and asked him to testify that he had given the defendant authority to sign it and that the defendant had said that he would so testify. There is additional evidence by Suhumskie and the various directors of the bank to negative the passage of any such resolution as the one in question. In addition to this, the ledger accounts were introduced showing the entry of a credit in the personal account of Craig in the sum of $959.52 and in the undivided profits account of $999.37 as of the date of the acquisition of the Nome paper. During the time

in question the defendant was the president of the bank and an active and managing officer. The evidence is clearly sufficient.

Finding no error in the record prejudicial to the defendant, the judgment must be affirmed. It is so ordered.

CHRISTIANSON, Ch. J., and BURKE, JOHNSON, and NUESSLE, JJ., concur.